Good morning, Council. We have two cases that we'll be hearing this morning. The first is Jaludi v. Citigroup, number 21-1108. And we will start with you, Ms. Bowen. Good morning, Your Honors, and may it please the Court. My name is Mary Levy, and along with my colleague Jessica Riccobara, we supervise the Federal Appellate Litigation Clinic at Temple Law School. It is my pleasure to introduce to the Court today Ms. Christina Bowen, who was a student in our clinic and graduated last week, and she will be arguing today on behalf of the Appellant. Thank you very much. Thank you, and may it please the Court. My name is Christina Bowen, representing Appellant Abdul Jaludi. May I request two minutes of time on rebuttal? You may. Mr. Jaludi, a whistleblower with over 20 years of experience at Citigroup, has faced a continuing campaign of retaliation meant to prevent him from securing employment in his chosen field. In this case, the District Court correctly found it had subject matter jurisdiction to hear this case, but the District Court erred in two aspects. First, the Court erred in declining to apply the continuing violation doctrine, and second, the Court erred by dismissing his complaint with prejudice and not allowing him one chance to amend his complaint. Before we get there, could we start with exhaustion and jurisdiction? You say that 1514a b1b's exhaustion requirement isn't jurisdictional, but the Second Circuit found otherwise. Don't the textual cues of putting exhaustion and the jurisdiction in the same paragraph cut the other way against you? No. The Daley case failed to apply the Supreme Court precedent of Arbonne-Henderson, which is meant to help a court distinguish between a non-jurisdictional claims processing rule and a jurisdictional rule. The case that is more on point is this Court's precedent in GERA. In GERA, the statute is almost identical in language to the filing deadline language in SOX, and it also mentions the SOX decisions that found the filing deadline to be jurisdictional and described those cases as easily missing the critical differences between true jurisdictional conditions and non-jurisdictional limitations. But GERA addressed only with an untimely administrative complaint that divested jurisdiction. Here, where there was just an end run around the process of administrative exhaustion, why shouldn't we come to a different conclusion, particularly where the structure of the statute, something that we pointed to in GERA, seems to separate out the statute of limitations provision from what we contrasted it with, a jurisdiction type provision in the kick-out provision. The filing deadline in the SOX Act is under the procedure section, one of the structural indications that it is a claims processing rule. Further, with regard to the filing deadline and the untimely filing deadline, a mandatory aspect of a claim does not necessarily indicate that it is jurisdictional. That's true. But there's a case you didn't cite, the parties didn't cite, Fort Bend County versus Davis. Justice Ginsburg writes an opinion saying Title VII, exhaustion not jurisdictional. She says what we would expect if it were going to be jurisdictional is that Congress would incorporate it, the exhaustion requirement, into a jurisdictional provision. And that's actually what we have here. We have the second part of the paragraph talking about jurisdiction and the first part of the paragraph talking about exhaustion. So, you know, do you have a response to that as to why we should separate out those two parts? This court specifically said in GERA that the proximity to the kick-out provision is not an indication of... So let's just say what value, though, does the jurisdictional grant in subsection B have? Who does that grant jurisdiction for? If we were to say, like, for instance, if we say what value does 28 U.S.C. 1331 have? You'd say that gives jurisdiction over questions arising under federal law, right? The question is how would we define the jurisdictional grant in subsection B if it is not for claims that are first presented to the Secretary of Labor and for which no response comes 180 days later? This is a claims processing rule. What it does is essentially provide for an orderly progress of litigation, which says when things should be filed in order. Okay. But back to my question on subsection B. How would you define... Because you acknowledge that subsection B does give jurisdiction, some jurisdiction, because it says which shall have jurisdiction over such an action. How would you define that if you were to do a parenthetical after that site? What would your parenthetical say? Because what I'm positing the parenthetical would be is giving jurisdiction over claims presented to the Secretary of Labor and not responded to within 180 days. And if that's the parenthetical that we would put in, then it is jurisdictional conferring for that scenario. So what's your contrary parenthetical? That this is an administrative exhaustion rule and that we have that here. Mr. Giuludi filed an OSHA complaint. The Secretary of Labor, giving that responsibility to OSHA, did not respond within 180 days. And Mr. Giuludi is able to bring his claim as it is a non-jurisdictional provision. If that's not a prerequisite to the exercise of jurisdiction, what work is the language they're doing talking about when a court shall have jurisdiction? It is a claim processing rule. It is providing, as I said before, for orderly litigation, providing an order for how things should be filed. It does not impact the federal question jurisdiction that the court has had from the beginning of this case. So at one level, maybe that's true. Maybe this works as a channeling provision or a claims processing provision that says you have to do this first for federal question jurisdiction, right? And the previous panel that decided this case said it was under federal question jurisdiction. But maybe it does more than that, too. Maybe it also gives jurisdiction, at least for B, to the extent B gives jurisdiction, a separate grant of jurisdiction in addition to this. This is no longer just claims processing, but this is part and parcel of that grant of jurisdiction. So you can kind of, you have your claim processing point for federal question jurisdiction, and they're going to lose under federal question jurisdiction if they don't do this claim processing or this channeling. But maybe it also is a freestanding grant of jurisdiction with this exhaustion requirement built in. Again, I would say that it has no jurisdictional grant. In GERA, the court stated that the proximity to the kickout provision did not impact the filing deadline. I do want to let you get to the timeliness, but one last question on this. Let's assume we think it's jurisdictional. Am I right that we have to measure the jurisdiction at the time the suit was filed and that there was no exhaustion at the time the suit was filed? We can't treat it as, oh, well, maybe there's something later that cured that exhaustion problem. Mr. Geludi did cure the exhaustion problem. He filed an OSHA complaint within 180 days. But can it be cured if there's no jurisdiction at the time the suit is filed? I thought that's when we ordinarily measure jurisdiction. If there is not jurisdiction? Yes. Am I right that that can't be cured if you didn't have it when you filed? Correct. But because we have federal question jurisdiction and he cured the administrative exhaustion requirement, he has set out all the requirements for a SOX claim. Okay, so that works if exhaustion is non-jurisdictional. Correct. All right. Let's go on. Actually, why don't we, I want to go back to the contrast between the Federal Railroad Safety Act and the SOX provision, because the SOX provision  without regard to the amount in controversy, the Federal Railroad Safety Act goes on to talk about without regard to the amount in controversy and at the request of either party, the action can be tried by a jury. Should we read this as not necessarily a grant of jurisdiction, but providing how that jurisdiction might be exercised? Yes, that is precisely what the court sought to differentiate in Anderson and Arbaugh by asking courts to be meticulous in what they label jurisdictional. What about the fact that there's not a separate jurisdictional provision in the statute? I would look to the fact that there is a procedure section and that this specific provision is under the procedure section rather than what is not in the statute. All right. If there are no further questions from my colleagues on this issue, let's move on to the question of timeliness and whether the operative complaint stated a claim. You can see that none of the allegations that are in the complaint right now would be within the 180 days. Correct. So the only question for us really is whether that dismissal, assuming jurisdiction, was with or without, should have been with or without prejudice. Correct. Mr. Jaliti was not given a single chance to amend his complaint. He was not given a chance to fully detail the December 2017 incident with the headhunter. He has set out a continuous pattern of retaliation, of blacklisting. He's connected with former co-workers over and over again with a promising job opportunity. He's been told that Citigroup is not allowed to consider him. He has been told by these employees it is not in their best interest. He doesn't need to be permitted to amend if it's futile. And that seems to depend on whether we're prepared to extend the continuing violation doctrine into this context. We obviously have not done that and rejected it even in a Title IX context. Why should we take it here into the context of retaliatory acts that seem by their very nature to be discreet? The Third Circuit, this Court, has never confined continuing violation to a specific act. It has applied the doctrine in procedural due process claims, Eighth Amendment claims. They failed on the facts, but they applied the doctrine and they went through the tests set out in Mandel. Further, the District Courts have applied the doctrine in inadequate medical care claims, ADA claims. In this case, Mr. Jaliti has set out a continuing campaign. He is not suing for several counts of discreet act. He is suing for this campaign that spans several years, many, many acts. But the logic of a continuing violation is, take a hostile work environment, a classic example, no one individual comment might be actionable. You have to get up to the level of severe pervasive, right? Usually that's an aggregation of things. So there's a reason why you expect the person doesn't file at the first moment or the second moment, but when eventually the person can file, you can look back and understand the campaign together. But here he's talking about some specific adverse actions. They're either actionable or they're not. So why should we expand, extend the precedent into this area? It doesn't look like that. I mean, you look at cases in the National Passenger Railroad Corp versus Morgan are very careful to separate this out. And the norm is you're not applying a continuing violation. So why make an exception? We have to look at the context within which this is happening with Mr. Jaliti. This is happening behind his back. This is a whisper campaign. If he goes ahead and has one job interview and it doesn't work out, that may not be actionable. He doesn't know what's happening behind his back. But when he begins to hear what is happening behind closed doors, it becomes clear that this is an overarching campaign and not specific discrete acts. So is the continuing violation that you would ask us to countenance, that goes back not just to his termination, but even to the acts before? No, this goes back to, I believe the first time in the complaint is about a year after his termination. So let's assume we buy a continuing violation. The only act you've got within this period is the headhunter didn't respond to him. But I don't see a concrete fact that links Citigroup to that headhunter. Well, you're on our time. Yeah, thank you. I would say Mr. Jaliti is entitled to all reasonable inferences from the pleading at this stage. Further, Mr. Jaliti has not even had the chance to plead that formally. That specific incident was raised as an attachment to a motion by Citigroup. And Mr. Jaliti has added some details along the way to clarify. Further, when you look at this even consider you, and when you consider the small industry that this is, it is a reasonable inference that this headhunter saw the one major job on his resume with Citigroup for over 20 years and was aware of these rumors, was told, called Citigroup. This pattern of previous incidents makes this campaign, makes this part of a campaign. Is there any evidence at all that that was motivating the headhunter in not returning calls? Or is that just speculation because of past acts? There is, I believe, there has been some discussion about connections between certain individuals who work at Citigroup and who know each other. But Mr. Jaliti has not had the chance to add any of that to the record. He was not given a leave to amend. When he asked to amend specifically to add the more recent incidents such as the December 2017 incident. Are you saying if you were permitted to amend and add that incident that he could add as an allegation that there was a connection between someone at Citibank who spoke with the headhunter? He is entitled to the reasonable inference. It is a reasonable inference that a headhunter would see a resume and the maybe one major job on that resume is with Citigroup and talked to someone at Citigroup. Further, Mr. Jaliti, this is all happening behind his back. He is entitled to a reasonable discovery to start to develop these facts. He hasn't had the opportunity to do so. You had also identified the 2019 settlement agreement with the CFPB as another allegation you would add. How is that related to the alleged continuing violation here? This speaks to the continuing consequences for Citigroup of the whistleblowing. It speaks to their motivation behind seeking to keep Mr. Jaliti out of the industry. It's part of this unified motive behind the blacklisting campaign. Okay, we'll hear from you in rebuttal. Thank you. Mr. Lindhorst. Good morning, your honors. May it please the court. My name is Tom Lindhorst. I'm the law firm of Morgan Lewis, and I represent Citigroup. Let me start with the jurisdictional question. There is one and only one grant of jurisdiction to a federal district court in a SOX retaliation case. It comes in the section we've been discussing, B1B, which we've called the kickout provision, and it provides that the claim first be presented to the Secretary of Labor who's delegated that responsibility to OSHA, and if a final order of the Secretary of Labor is not issued within 180 days, the complainant may, but is not required to, remove the claim and go to federal court. Why is that needed as a jurisdictional provision? Obviously there's federal question jurisdiction, so why shouldn't we read that as just qualifying, that is without regard to the there's a federal right of action in court, or that the court has jurisdiction to hear it. Congress can, of course, limit that, and has done so in this case. Congress can also give duplicative grants of jurisdiction. Like we get a certain amount of section 1983 cases, and those arise usually under 1331 federal question, and then there's a special civil rights grant of jurisdiction, 1343, that many litigants allege to. It's the classic litigants play of belt and suspenders. I have two bases for jurisdiction. I think Judge Krause's question went to the fact of maybe this subsection B is a grant of jurisdiction, maybe it's one way into federal court, but let's say that's true. Let's say that's jurisdictional. Let's say that's one path into federal court. Why is it the only path? Why isn't there also section 1331 jurisdiction into federal court too? It would seem odd that the court would grant a more narrow jurisdiction. But they do in the 1983 context. That's why they have 31 and 43. I mean, there's no indication, certainly in the statute, that it's just always jurisdictional under 1331. Why isn't the text telling us that this is permissive here? It speaks about in general, and provides that a person who alleges a discharge or other discrimination may seek relief, but this is not mandatory language or exclusive language. And it speaks to claimants, not courts. It speaks to claimants because it vests jurisdiction in the Department of Labor. It may be that the claim never gets to the court. It can be fully and finally adjudicated before the Department of Labor, and the jurisdiction of the court may never come into play. And so it's mandatory in that it must start at the Department of Labor. It may end up in federal court or it may not at the option of the claimant, not the option of the respondent, not the option of the court. It's essentially an election that is given to a complainant if they first gone to the Department of Labor and presented it there. Now, of course, in Guerra, they did that. They had a complaint first presented to the Department of Labor before they went to court. The question was, if it was untimely with the Department of Labor, was that jurisdictional? And this court said no. But it didn't say that there never needed to be a complaint presented to the Department of Labor in the first instance. And in fact, the predicate of the analysis of whether the complaint needed to be timely suggests that there had to be some complaint at all. Otherwise, the whole decision is dicta. The Guerra Court recognized B2B as jurisdictional. The appellant recognizes B1B as jurisdictional. It's the only jurisdictional provision set forth in the statute, and it clearly delineates a complaint first provided to the Department of Labor. Briefly, I'll just say there's no basis for retroactively finding jurisdiction. Of course, in Lujan and the principle is you've got to have jurisdiction at the time of the filing, and any change in jurisdictional facts subsequent to that don't cure subject matter jurisdiction. What do we do with the fact that subsection B here provides for de novo review in the district court? This is clearly not the kind of channeling statute that would clearly deprive a district court of jurisdiction. To the contrary, it seems like it's setting up an either or. You can proceed on the administrative side, or you can get de novo review in the district court. You can get de novo review if there's no final order of the secretary, but you don't get to federal court at all until you've gone to the Department of Labor and exercised your election to go and get de novo review because there has been no final judgment with the Department of Labor. There may have been an investigation. There might be a lot of interim stuff, but the fact that there's de novo review, I think, recognizes that there's been no final determination by the Secretary of Labor. What is your best argument? We've been looking at some of the indicia we would typically scrutinize, whether it's framed in terms of a limitation on the power of the court rather than the claimant, whether there's channeling, whether it's by its terms exclusive, and what's your best argument based on this text that it is in fact jurisdictional? Well, I think because it's, well, we know it's jurisdictional. It grants jurisdiction to the court. Whether it's exclusive jurisdiction or 1331 comes in is another question, but we know it's jurisdictional. This court in Guerra said it was jurisdictional and contrasted this section against the timeline for filing the complaint as non-jurisdictional and felt that the separation between the two was significant. And if it wasn't jurisdictional, then I think the Guerra decision is just dicta because there was subject matter jurisdiction all along under 1331 or... So let me just tease this out. Let's just say a person wants to proceed on a SOX retaliation claim and they draft their complaint and their complaint says, I have two bases for jurisdiction. I have 1331 and then I have subsection B. And then let's just say they, for whatever reason, they don't exhaust. They don't go to the Secretary of Labor. You might be able to say under your reading, because you didn't exhaust, you don't have jurisdiction under subsection B. That's part and parcel with the subsection B grant of jurisdiction. Now let's turn to your 1331 basis for jurisdiction. It doesn't have exhaustion as a requirement. Now we're going to look at subsection A through a non-jurisdictional lens. And it's a claim processing rule that you didn't follow, so you still lose. But subsection A might in some weird way do double time. It might be that you didn't follow subsection A under subsection 1331. What do you think about that possibility? I don't like it much. I mean, I guess I would go back to, you know, essentially rendering annulity to the jurisdictional grant in B1B, essentially rendering dicta the Garrett decision. Well, remember, federal question statute could get amended. I mean, there's no amount of controversy part of the federal question jurisdiction right now. Maybe Congress decides to amend that and say, oh, now the amount of controversy is very, very, very high, in which case B would be your only play because it has no amount of litigants only play, and then A would be more significant. So the non-exclusive potential way of viewing this is this is just a hedge against amendments to other jurisdictional conferring statutes, and those do change. Well, they change, but I guess the question you'd have is looking at the statutes, are they compatible? Is it compatible if 1331 requires $100,000 in controversy, and it's written in a way that suggests that you better have $100,000 if you're coming to federal court. Maybe that should trump B1B in that instance, because you have a federal statute that may supersede or may be more specific. You try to read the statutes in a consistent way, but you also look at the statute that's more specific to the situation. So what I hear you saying is that you actually think subsection B is, by virtue of being more specific, precludes the operation of federal question jurisdiction for retaliation claims under this federal statute? Correct. You've been pointing to GERA as support for your position. We talked in GERA about D3, referring to it as the kickout provision that was Conrail's supposed jurisdictional hook, and then went on to look at the SOX cases where the provision was found to be jurisdictional and called them ride-by types of analyses. If anything, doesn't GERA, in the way we approach the issue there, cast doubt on the idea that this is an exclusive jurisdictional provision? I don't see that, Your Honor. I think GERA was looking at the timeliness of a complaint, and it looked at some district court decisions that referenced that as jurisdictional. Of course, the Supreme Court has expounded on the loose use of the word jurisdictional in findings, and so GERA was very focused on what is truly jurisdictional and what is not. It certainly wasn't dealing with any binding authority, but GERA, I think, supports the action here because GERA points to B1B as jurisdictional. It contrasts that with the separate deadline for filing the complaint as non-jurisdictional, finding the separation between the two provisions to be significant, recognizing this as jurisdictional. The complainant has recognized this as jurisdictional, and so I think, if anything, GERA supports that position. On the statute of limitations, just to be clear, you're not pressing the argument at this point that A is jurisdictional in view of GERA, right? That the timeliness of the complaint is jurisdictional? We dropped a footnote to preserve it, but we recognize this panel would be bound by GERA on that point. So speak to us about amendment, because here we had a pro se litigant, hasn't had an opportunity at all to amend. So particularly given the liberal approach we generally take in that circumstance, why shouldn't that be permitted here? In this case, unlike a plaintiff who is not subject to administrative exhaustion, Mr. Jaloudi is not free to just come up with any new fact, any new allegation that he may decide to make, assuming he has a basis to make it. He has to make an allegation that's been exhausted through OSHA and the Department of Labor. And in this case, that's relatively easy to ascertain because we look at his federal complaint and we look at his OSHA complaint, and there's one difference. There is the non-responsive headhunter from December of 2017. So he could potentially amend to add that allegation, but the district court, as it was required to do, assessed whether that amendment would be futile. And it found that it would be futile because that allegation fails to state a claim as a plausible claim for relief under SOX, under Iqbal, and Twombly. That finding is not in dispute on appeal, and I don't think it can reasonably be disputed. So the only additional allegation that's been exhausted that could be brought over is the non-responsive headhunter. The district court found that futile, and therefore, there's no basis for amendment and also no basis to dismiss without prejudice. In the circumstance, which is often the case, or at least sometimes the case, where there are allegations sitting at an agency, that could be the basis for a federal court action in the future. It may be that the proper action for the district judge is to dismiss without prejudice. But by the end of the district court's opinion in this case, there was nothing sitting at OSHA that could be the basis of a future federal court action. Everything prior to the non-responsive headhunter was untimely, as the district court found. Nothing at OSHA is viable in a future action, and to dismiss without prejudice would be to invite the improper re-litigation of those two questions in a future action. And so, having found those things, as the court was required to find, it was appropriate to deny the amendment as futile and dismiss with prejudice. Is there any circumstance where a pattern of retaliatory activity could trigger the continuing violation doctrine? I think possibly. So, for example, SOX. Well, it's unclear. It would have to be essentially a hostile environment playing in the retaliation context. Let's say that your supervisor takes away one percent of your duties, and then another one percent of your duties. And so, over time, it amounts to leaving you in an empty office. It'd be hard to point to any one of those things as constructive termination, but it seems like you got to aggregate them all to say, yeah, actually, it was constructively terminated. Well, I think the constructive discharge standard is different from the discrete versus continuing violation standard. You have to show, as an element of the constructive discharge standard, that the workplace was so intolerable that no reasonable person would stay. And then you need to file your claim within the statute of limitations coming from the constructive discharge. But relying on the one percent reduction to support your constructive discharge on January 1, where you filed your complaint within the 180 days, I don't think is the continuing violation doctrine. So, if there was, if Mr. Geludi realized that this whisper campaign, as his counsel has described it, now becomes spoken out loud, and he realizes that something happened this week or next week, is it your position that he could just file a separate action for that if he exhausted? Or is your point that that would forever be barred? That's a proof or evidence question. If tomorrow he goes and applies somewhere and he has a rule 11 basis to say that someone at city unlawfully interfered with that, he can go back down to the Department of Labor and file a new SOX complaint and eventually bring it to federal court if he can. But this isn't a discovery rule. If I don't get the job, my statute of limitations starts to run. And whether that's one time or three times, and whether that's related or not related, those are discrete acts. The Supreme Court in Morgan and this court in Mandel said a discrete act is one that is individually actionable. It would turn a lot of things on its head to say a failure to hire is not individually actionable. It would make it much harder to make a failure to hire claim because you'd have to show repeated circumstances. Same thing with interfering with my attempt to get a job at a third party. If it's unlawful at all, it is when it's done one time. If I am deprived of one opportunity that's individually actionable, if it's actionable at all, there's no requirement that it be repetitive or require a course of conduct over a period of time. Okay. Thank you very much. Thank you. Vaughn, we'll hear from you on rebuttal. Thank you. Two minutes on rebuttal. Can I ask you to start with the question I posed to your colleague? And that is, essentially, if we've got alleged retaliatory action, given the elements of retaliation that require you show that that's the motivation, it's a contributing factor to whatever the employment adverse action was, doesn't it need, by its nature, to be viewed as discrete acts? No. Mr. Geludi has alleged an ongoing campaign of blacklisting. He has not simply filed several claims of failure to hire or interference. He's filing the SOX Act for You've used this phrase of ongoing campaign. When I think of a campaign, I think of a lot of affirmative action. So I think what you're saying is that his former employer was actively just picking up and calling people to say, don't hire Geludi, don't hire Geludi, and that this was a bunch of action. But it feels a little different if someone calls for a reference from that prior employer, and they say, oh, don't hire Geludi. That's responsive. That's not a campaign in the same way of we're going out, get the word out, never hire Geludi. It's more like if anyone calls, say, give them a bad reference or whatever it is. And since that's a response to a separate stimulus, a call not initiated by the employer, that feels discreet. It may be a series of similar discreet actions, but it's not an affirmative campaign to go out and take affirmative action. It's a response to a stimulus. I would say Mr. Geludi has not even had the chance to develop those facts or discover exactly what the interaction was that led Citigroup to say these things. But the biggest inference that we could possibly make that would be reasonable would be that the headhunter called Citibank and Citibank said something negative. I don't think it's a reasonable inference to say that Citibank called every headhunter in town affirmatively to do it. And so if that's the biggest inference we can make, that's still not a campaign. That's a response to an individual stimulus, which feels more discreet. I would disagree. I believe if one employee asked another employee, how was your day? And they responded with a racial epithet. And that was one of several acts of conduct that form a hostile work environment. I don't believe that that response to my saying how was your day would constitute, would not constitute an affirmative act simply because it was responsive. I'd also like to add that the district court's finding of futility was based on the assumption that Mr. Geludi would not be able to provide further details. And Mr. Geludi was never given the chance. The finding was hypothetical at best. And we've asked you whether there are any specific additional details that you could provide particularly that would show some nexus for that contributing factor element. It sounds like there's not at this point other than just the inference based on what you allege to be a campaign of prior conduct. Is that right? I will say that I was uncomfortable adding information that is not on the record below. Are you asking about further information? Is there specific information that could be added showing a nexus or is it simply to better articulate that an inference could be drawn from prior conduct? Mr. Geludi did allege personal connections between this headhunter and this specific job and city group. Okay. Thank you. All right. We will take this case under advisement. We thank both counsel for excellent argument and we thank in particular Temple University and the Beasley School of Law for creating these important opportunities for professional development of the young lawyers in our bar. Thank you.